UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOLVENTS COMPANY INC., <br>     Plaintiff <br><br> v. <br><br> ENVIRO TECH INTERNATIONAL INC., <br>     Defendant | No. 25 CV 5664 <br><br> Judge Jeremy C. Daniel |

**ORDER**

The counterclaim defendants' motion to dismiss [57] Enviro Tech International Inc.'s counterclaims is granted.

**STATEMENT**

This case is before the Court on Plaintiff/Counterclaim Defendants Solvents Company Inc. and Dov Shellef's (together, the "counterclaim defendants") motion to dismiss Defendant/Counterclaim Plaintiff Enviro Tech International Inc.'s ("ETI") counterclaims. (R. 57.)[1] The facts below are drawn from Solvents' complaint and ETI's verified counterclaims, and each party's respective allegations are accepted as true for the purpose of resolving this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (pleading standard applies to counterclaims).

**Background and Procedural History**

In March 2024, Solvents ordered and paid for 68 drums of a chemical compound called n-propyl bromide ("nPB") from ETI. (R. 2 ¶¶ 5–9.) Solvents alleges that ETI refused to provide it with the nPB and has also failed to return payment. (*Id.* ¶¶ 10–13.) Solvents filed suit in New York state court to recover its payment, which ETI removed to the United States District Court for the Northern District of New York. (R. 1; R. 2.) That court later transferred it to this Court upon ETI's motion. (R. 23.)

---

[1] For ECF filings, the Court cites to the page number(s) in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

ETI answered Solvents' complaint and filed fourteen[2] counterclaims against Solvents and Shellef. (*See generally* R. 33.) The counterclaims relate to a Patent License Agreement (the "PLA") which the parties executed in 2022. (*Id.* ¶¶ 11–13.) The PLA provided ETI with a 10-year, non-exclusive license to use Solvents' U.S. Patent No. 9,816,057 B2 (the "'057 Patent") in ETI's products, including its NEXT HD Pro product line. (*Id.* ¶¶ 11–13, 16–17.) ETI alleges that both Solvents and Shellef represented that Solvents owned and could license the '057 Patent. (*Id.* ¶ 11.) Further, the PLA set forth the parties' obligations for the sale and purchase of nPB in the next two years. (R. 33-2 ¶ 4.)[3] Specifically, it listed the price and quantity of nPB that Solvents must purchase from ETI in 2022 and 2023. (*Id.*) It did not do so for 2024. (*Id.*) Instead, the PLA stated that the price and availability of nPB for 2024 "shall be negotiated" separately by the parties. (*Id.*) ETI "maintains that the [PLA] is valid, binding, and enforceable against" both Solvents and Shellef. (R. 33 ¶¶ 59, 97.)

The PLA included two other provisions relevant to this case. First, it included an arbitration clause. (R. 33-2 ¶ 12.) The parties agreed that if "a dispute shall arise between the parties to this Agreement," the parties will arbitrate under the "United States Arbitration and Mediation Rules of Arbitration in the county wherein the Defendant is located." (*Id.*) Second, it included a warranty that Solvents "is the sole and exclusive owner of the entire right, title and interest" and "has the right to grant the non-exclusive right, license and privilege" as outlined in the PLA. (*Id.* ¶ 2.)

ETI's counterclaims vary but all derive from the PLA. Counts I and VIII allege that the counterclaim defendants breached the PLA by failing to perform and by declaring that ETI had no right to use the '057 Patent. (R. 33 ¶¶ 36–39, 74–77.) Counts II and IX allege a "scheme to defraud" ETI by fraudulently inducing ETI to enter into the PLA. (*Id.* ¶¶ 40–48, 78–86.) Counts III and X allege consumer fraud based on alleged misrepresentations that the counterclaim defendants made. (*Id.* ¶¶ 49–57, 87–95.) Counts V and XI seek declaratory judgments that the PLA is valid and enforceable. (*Id.* ¶¶ 58–61, 96–99.) Counts VI and XII allege state law fraud relating to alleged false statements in connection with formation of the PLA. (*Id.* ¶¶ 62–69, 100–07.) Counts VII and XIII allege that the counterclaim defendants negligently misrepresented Solvents' ownership of the '057 Patent and other warranties under the PLA. (*Id.* ¶¶ 70–73, 108–11.) Counts XIV and XV allege tortious interference with business expectations based on the counterclaim defendants' alleged communications with ETI customers. (*Id.* ¶¶ 112–37.)

The counterclaim defendants now move to dismiss ETI's counterclaims on grounds of *forum non conveniens* under the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*,

---

[2] The counterclaims appear misnumbered. The Court refers to each counterclaim using the number listed in ETI's pleading.

[3] ETI attaches and "fully incorporate[s] by reference" the PLA to its verified counterclaim. The Court may consider "documents incorporated into the complaint by reference" when evaluating a motion to dismiss. *Smykla v. Molinaroli*, 85 F.4th 1228, 1234 (7th Cir. 2023).

or alternatively for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (R. 57.) The counterclaim defendants argue that the counterclaims are subject to the PLA's arbitration provision and otherwise fail to state a claim. (*Id.*; R. 68.) ETI argues that the counterclaim defendants waived their right to arbitrate by initiating court proceedings and that it has sufficiently stated claims. (R. 64-1; R. 71.)

**Legal Standard**

"A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable," save certain exceptions. 9 U.S.C. § 2. A party may require arbitration of certain claims when there is "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 687 (7th Cir. 2005). A right to compel arbitration is waivable, either expressly or implicitly through conduct inconsistent with a desire to arbitrate. *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). Implicit waiver can occur when a party opts to litigate a dispute in court instead of in arbitration. *Id.*

When a party seeks to arbitrate in a forum outside of the district in which the district court sits, it must either move for dismissal on grounds of *forum non conveniens* or move to transfer to a district court that has authority to compel arbitration. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60–61 (2013); *Garage Door Sys., LLC v. Blue Giant Equip. Corp.*, 134 F.4th 953, 957–58 (7th Cir. 2025). Usually, evaluating a motion to dismiss on *forum non conveniens* grounds requires a court to weigh the convenience of the parties and other public interest considerations. *Atl. Marine Const. Co.*, 571 U.S. at 62–63. But where a valid forum selection clause exists, "the calculus changes" and a court must give the clause "controlling weight in all but the most exceptional cases." *Id.; see also Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs.*, Inc., 7 F.4th 555, 560 (7th Cir. 2021) (holding that *Atlantic Marine* applies to cases involving clauses requiring arbitration outside the geographic boundaries of the district court).

**Analysis**

The counterclaim defendants argue that the PLA's arbitration clause is valid and requires arbitration of ETI's counterclaims. (R. 57 at 8–11; R. 68 at 3–6.) ETI does not expressly challenge the validity of the arbitration provision or otherwise argue that it is not entitled to controlling weight; rather, it argues solely that the counterclaim defendants waived their rights to enforce the provision when Solvents chose to sue ETI in a judicial forum. (R. 64-1 at 4–9; R. 71 at 1–4.)

<u>Enforceability of the Arbitration Provision</u>. The PLA's arbitration clause is valid.[4] (R. 33-2 ¶ 12.) "An admission made in a pleading is a 'judicial admission,' and ordinarily is binding." *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 669 (7th Cir. 2007). In its pleadings, ETI has stated that it "maintains that the [PLA] is valid, binding and enforceable against" the counterclaim defendants and filed two counterclaims seeking a declaratory judgment to that effect. (R. 33 ¶¶ 58–61, 96–99.) The Court accepts these admissions and concludes that the PLA and its arbitration provision is valid. Further, when a party's allegations "say nothing of fraud related uniquely to the arbitration clause," that party's claim that it was fraudulently induced to enter into a contract does not render the arbitration clause unenforceable. *James v. McDonald's Corp.*, 417 F.3d 672, 680 (7th Cir. 2005). ETI has not alleged fraud "related uniquely" to the arbitration provision. (*See generally* R. 33.) Last, neither party has suggested that the dispute is outside the scope of the arbitration clause. The clause is therefore valid.

The Court must also address whether Shellef, who signed the PLA on behalf of Solvents but not individually, can compel arbitration of ETI's counterclaims asserted against him. The counterclaim defendants argue that ETI's counterclaims against Shellef are also subject to arbitration under a theory of equitable estoppel. (R. 57 at 10.) ETI does not address this point. Equitable estoppel is one mechanism for holding a non-signatory bound to an arbitration agreement which they did not sign. *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 687 (7th Cir. 2005). This occurs "when the signatory references to or presumes the existence of a written agreement in asserting its claims against the non-signatory, and when the signatory raises allegations of 'substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract.'" *See Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 889–90 (N.D. Ill. 2014). Both circumstances are present here. (R. 57 at 10–11.) ETI "maintains that it has a valid contract with Solvents and Dov under the [Patent License] Agreement" and seeks to enforce the PLA in several of its counterclaims against Shellef. (R. 33 ¶¶ 74–77, 113, 126.) This satisfies the first prong. Further, many of ETI's counterclaims are predicated on an alleged "scheme to defraud" between Solvents and Shellef and contain references to concerted action. (*See, e.g.*, *id.* ¶¶ 24, 30–31, 41, 79, 88, 114, 127.) This satisfies the second prong. Therefore, both counterclaim defendants can enforce the PLA's arbitration provision.

---

[4] The clause mandates arbitration in "the county wherein the Defendant is located." (R. 33-2 ¶ 12.) ETI asserts that because it is the named defendant in Solvents' complaint, the clause mandates arbitration in Illinois, where ETI is located. (R. 64-1 at 3, 7.) But ETI is the plaintiff with respect to its counterclaims, and Solvents and Shellef are the defendants. *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 238 (1998) (a defendant that files counterclaims is a plaintiff as to those counterclaims). ETI appears to concede this, frequently referring to Solvents and Shellef as "Defendants" in its counterclaims. (*See, e.g.*, R. 33 ¶¶ 24, 29–35, 41–46, 51–55, 79, 91–93, 114, 123, 127, 136–37.) That aside, to the extent that this provision is ambiguous, any ambiguity must be resolved by the arbitrator(s), not the Court. *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003) (noting that federal courts should not answer "the antecedent question of how the ambiguity [in a contract subject to arbitration] is to be resolved").

4

Waiver. Having concluded that the arbitration clause is valid, the Court turns to whether Solvents waived its right to arbitrate by filing a lawsuit in court seeking to enforce the Purchase Order. The counterclaim defendants argue that filing suit over the Purchase Order does not waive its right to arbitrate the counterclaims, which derive from the PLA. (R. 57 at 8–11; R. 68 at 3–4.) ETI contends that the right to enforce an agreement to arbitrate is waivable; a party who opts for a judicial forum generally waives the right to arbitrate; and Solvents' decision to pursue litigation in court means they waived their right. (R. 64-1 at 4–9.)

A party can waive its right to enforce an arbitration clause either expressly or impliedly. *Cabinetree*, 50 F.3d at 390. The Court assumes for purposes of this analysis that Solvents did so by opting to file a lawsuit to enforce the Purchase Order in court. *Id.* But Solvents is not seeking to arbitrate *its* claims; instead, it is seeking to arbitrate ETI's counterclaims. "[D]ifferent claims may arise from a common factual basis, and that in one claim, a party may wish to waive arbitration while preserving that right in the other." *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 652 (7th Cir. 2000); *see also Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332 (7th Cir. 1995) (holding that a plaintiff's choice to bring state law breach of contract claims in court did not waive its right to arbitrate other claims under the Lanham Act).

Here, Solvents' main claims and ETI's counterclaims arise from different agreements. The PLA does not govern the 2024 Purchase Order because the PLA only covered nPB purchases through 2023. (R. 33-2 ¶ 4.) Further, the main claims assert only breach of the Purchase Order and equitable return of money paid, whereas the counterclaims allege fraud-based causes of action, claims regarding the validity and breach of the PLA, and claims implicating intellectual property rights. (*Compare* R. 2 *with* R. 33.) As a result, the issues of law and fact relevant to each set of claims would necessarily be different. Similarly, the evidence presented would be different, as evidence of breach or performance under the Purchase Order is different from evidence of fraud, formation of the PLA, and the scope of licensed intellectual property rights. Additionally, a decision regarding whether ETI owes Solvents its money back under the Purchase Order would not dispose of ETI's PLA-based counterclaims. All of this suggests that the counterclaim defendants[5] waived their right to arbitrate the main claims but preserved that right with respect to ETI's counterclaims. *See Grumhaus*, 223 F.3d at 652; *Gingiss Int'l*, 58 F.3d at 332. Contrary to ETI's suggestion, this is not an all-or-nothing affair; some claims may be subject to arbitration, and others may not—even if all claims "arise from a common factual basis." *Grumhaus*, 223 F.3d at 652. Accordingly, the main claims remain properly before the Court, but ETI's counterclaims are subject to arbitration. *See MB Fin., Inc. v. Hart*, No. 17 C 8866,

---

[5] ETI's waiver argument is premised on Solvents' filing of its lawsuit in court. (R. 64-1 at 4–9.) Shellef, however, is not a named plaintiff in that lawsuit, and ETI has not alleged that Shellef initiated legal proceedings against it. Therefore, ETI's argument is inapplicable to Shellef, as ETI has not identified conduct Shellef took inconsistent with his right to enforce the PLA's arbitration clause.

2019 WL 316869, at *3 (N.D. Ill. Jan. 24, 2019) (granting counterclaim defendants' motion to compel arbitration of counterclaims and holding plaintiff's main claims properly before the district court).

ETI relies primarily on two cases, both of which are distinguishable from the facts of this case. (R. 64-1 at 4–8 (discussing *Cabinetree*, 50 F.3d 388 and *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585 (7th Cir. 1992).) *Cabinetree* involved a plaintiff who filed suit to enforce a franchising agreement, with no counterclaims in play. 50 F.3d at 389. The defendant moved to arbitrate the claims months into the case and at no time prior manifested an intention to arbitrate. *Id.* at 390–91. The Seventh Circuit held that the defendant's failure to seek arbitration earlier waived its right to compel arbitration later. *Id. St. Mary's* involved a similar setup: the plaintiff filed suit to enforce a construction contract, the defendant (who filed no counterclaims) marched through the lawsuit without mentioning arbitration, and the defendant then sought to arbitrate the claims after summary judgment. 969 F.2d at 586–89. Both cases involve facts different from those here, where Solvents took its first opportunity to seek arbitration of only ETI's counterclaims. (R. 57.) Regardless, both cases recognize that the waiver inquiry is a flexible one based on the particulars of the case. *Cabinetree*, 50 F.3d at 391 (noting that the "shape of the case might so alter" such that "arbitration [be] allowed to proceed" of some claims); *St. Mary's*, 969 F.2d at 587 (noting that "[n]o rigid rule exists"). As explained above, the specifics of this case warrant arbitration of ETI's counterclaims.

Underpinning ETI's argument is its assumption that the counterclaims are compulsory. (R. 64-1 at 3, 6–7, 9–10.) Compulsory counterclaims "must be filed to preserve the defendant's rights," whereas permissive counterclaims are not forfeited if a party fails to raise them in response to claims against them. *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1367 (7th Cir. 1990). ETI's argument fails for two reasons. First, it does not explain why (or cite any cases showing) its characterization of the counterclaims is accurate. As stated above, the counterclaims derive from a different contract, present distinct issues of law and fact, and require different evidence to support them. This suggests that the counterclaims are not compulsory. *Coplay Cement Co. v. Willis & Paul Grp.*, 983 F.2d 1435, 1441 (7th Cir. 1993) (noting that a permissive counterclaim "arises from a different contract"); *see also* Colonial *Penn Life Ins. Co. v. Hallmark Ins. Adm'rs, Inc.*, 31 F.3d 445, 448 (7th Cir. 1994). Second, ETI has not cited authority establishing that the Court must characterize the counterclaims as permissive before finding them subject to arbitration. Contrarily, Seventh Circuit precedent explains that while some claims might be arbitrable, others may not, even if they "arise from a common factual basis." *Grumhaus*, 223 F.3d at 652. Accordingly, the Court finds that the counterclaim defendants did not waive their right to compel arbitration of ETI's counterclaims.

Delay. The Court rejects ETI's suggestion that Solvents initially decided to litigate and later changed its mind.[6] (R. 64-1 at 4–9.) As explained above, the counterclaim defendants are seeking to arbitrate only ETI's PLA-based counterclaims, not Solvents' Purchase Order-based claims. Solvents could only seek arbitration of ETI's counterclaims once ETI filed them. And the counterclaim defendants sought to arbitrate the counterclaims at their first opportunity when they moved to compel arbitration in their first responsive pleading. (R. 57.) The counterclaim defendants preserved their right to arbitrate even before that, stating in their joint motions to extend time to respond to the counterclaims that they told counsel for ETI they are "likely to file motions to compel arbitration of ETI's counterclaims." (R. 37 ¶ 4; *see also* R. 45 ¶ 3; R. 53 ¶ 4.) This demonstrates that the counterclaim defendants have preserved, not waived, their right to arbitrate ETI's counterclaims. ETI mistakenly conflates the elapsed time of the case with the elapsed time since the counterclaims came into play. (R. 64-1 at 5.) In response to ETI's counterclaims, Solvents' filings provided ETI with notice that Solvents would seek arbitration, and then timely filed a motion to that effect in response. ETI's suggestion that the counterclaim defendants have engaged in delay tactics is not supported by the record. Accordingly, the Court grants the counterclaim defendants' motion to dismiss ETI's counterclaims on grounds of *forum non conveniens*.

Date: January 23, 2026

JEREMY C. DANIEL
United States District Judge

---

[6] The Court addressed its concerns about this "suggestion," that is, that the plaintiff seeks arbitration because settlement conferences showed the plaintiff the anticipated outcome, at the December 2, 2025, motion hearing. (*See* R. 77.) While troubled by the potential misrepresentations concerning the settlement process, and troubled by defense counsel's misstatements concerning positions taken in the brief, the Court will not issue a rule to show cause. Instead, the Court cautions counsel that zealous advocacy remains constrained by Rule 11 and counsel's duty of candor toward the Court.